UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| WORLDWIDE DETECTIVE AGENCY, INC. | CIVIL ACTION |
|---|---|
| VERSUS | NO. 10-1563 |
| CANNON COCHRAN MANAGEMENT SERVICES, INC. D/B/A CCMSI, and JERRY ARMATIS | SECTION "N" |

## ORDER AND REASONS

Presently before the Court is the Motion to Remand to State Court filed by Plaintiff, Worldwide Detective Agency, Inc. (Rec. Doc. 52). Also before the Court is the Motion for Summary Judgment filed by Defendant Cannon Cochran Management Services, Inc., d/b/a CCMSI (Rec. Doc. 31). As stated herein, **IT IS ORDERED** that the motion to remand is **DENIED** and the motion for summary judgment is **GRANTED**. Accordingly, **IT IS FURTHER ORDERED** that Plaintiff's claims against Defendant Cannon Cochran Management Services, Inc., d/b/a CCMSI ("CCMSI"), are **DISMISSED WITH PREJUDICE**.

## BACKGROUND

At all relevant times, Defendant CCMSI served as a third-party administrator for the City of New Orleans' ("City") workers' compensation claims. CCMSI, in turn, engaged Plaintiff to provide investigative services in connection with its assessment of these claims. In early March 2009, CCMSI terminated Plaintiff's services.

On May 3, 2010, Plaintiff filed suit against CCMSI and its vice-president, Jerry Armatis. Asserting jurisdiction under 28 U.S.C. §1332, CCMSI removed this matter to the Eastern

District of Louisiana on May 25, 2010. Plaintiff's initial motion to remand followed. After hearing oral argument on the motion, the Court denied Plaintiff's request that the action be remanded to state court based on the non-diverse citizenship of Defendant Armatis.[1]

Asserting that recently discovered additional facts demonstrate its reasonable possibility of recovery against Armatis, Plaintiff asks the Court to re-consider its earlier ruling denying remand based on the conclusion that Plaintiff had improperly (fraudulently) joined Armatis as a defendant to this action.[2] CCMSI maintains that the Court should refuse to consider Plaintiff's motion and, in any event, again deny remand. CCMSI also contends that it is entitled to summary judgment in its favor regarding Plaintiff's breach of contract claims asserted against it.

## LAW AND ANALYSIS

**I. Remand Standard**

In removing this action, Defendant CCMSI asserted subject matter jurisdiction under 28 U.S.C. §1332. That statute provides subject matter jurisdiction only when complete diversity of citizenship exists between the plaintiff and all of the properly joined defendants, and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. A plaintiff may not join a non-diverse defendant in a suit to defeat diversity jurisdiction *unless* the plaintiff has a viable claim against that defendant. When determining whether the plaintiff has a viable claim, however, "the plaintiff's intent that the joinder" of a defendant "should defeat federal subject matter jurisdiction is immaterial

---

[1] *See* Rec. Doc. 10.

[2] The Fifth Circuit now refers to "fraudulent joinder" as "improper joinder." *See, e.g., Melder v. Allstate Corp.,* 404 F.3d 328, 329 (5th Cir. 2005). Nevertheless, the term "fraudulent joinder" is still frequently used. Herein, the Court will use the term "improper joinder" unless quoting material that refers to the concept as "fraudulent joinder."

2

to the propriety of the removal," as long as the claim against the party to be joined is "not merely colorable or made in bad faith." 14C C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3723, at 629-30 (3d ed. 1998).

CCMSI again contends that Plaintiff improperly joined Armatis as a defendant and, therefore, that Armatis' Louisiana citizenship is immaterial. "The burden of proving a fraudulent joinder is a heavy one" that is borne by the removing party. *Green v. Amerada Hess Corp.,* 707 F.2d 201, 205 (5th Cir. 1983). Specifically, the removing party must show either: "(1) actual fraud in the pleading of jurisdictional facts, or (2) the inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *McKee v. Kan. City S. Ry. Co.,* 358 F.3d 329, 333 (5th Cir. 2004) (citation omitted). "[F]raudulent joinder must be proved 'with particularity and supported by clear and convincing evidence' by the removing party." *Doe v. Cutter Biological,* 774 F. Supp. 1001, 1003 (E.D. La. 1991) (quoting 14A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3723, at 343 (2nd ed. 1985)). The Court, however, should not pre-try the case. *Carriere v. Sears, Roebuck and Co.*, 893 F.2d 98, 100 (5th Cir. 1990).

The Fifth Circuit has historically used different phrases in describing the standard for improper joinder. Whether using the phrase "no possibility of recovery" or "no reasonable basis for the plaintiff to establish liability," however, the essential standard has been the same. *See Travis v. Irby,* 326 F.3d 644, 647 (5th Cir. 2003). In *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* the Fifth Circuit explained and clarified the standard:

> [T]he court determines whether the [plaintiff] has any possibility of recovery against the party whose joinder is questioned. If there is a arguably a reasonable basis for predicting that the state law might impose liability on the facts involved, then there is no fraudulent joinder. This possibility, however, must be reasonable, not merely theoretical.

3

313 F.3d 305, 312 (5th Cir. 2002) (internal citation and quotations omitted). *See also Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004).

Because the validity of the plaintiff's "claim against the [non-diverse] defendant(s) should be capable of summary determination," a full-scale evidentiary hearing is inappropriate for determining improper joinder. *Green,* 707 F.2d at 204. That being said, the scope of the inquiry for improper joinder goes beyond the pleadings to include summary judgment-type evidence. *Travis,* 326 F.3d at 648-49. This allows the Court to determine whether a plaintiff has a basis in fact and in law for his or her claim. *See, e.g., Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 542 (5th Cir. 2004). In conducting this inquiry, however, the Court "take[s] into account all unchallenged factual allegations, including those in the [petition], in the light most favorable to the plaintiff." *Travis*, 326 F.3d at 649. Finally, all ambiguities, whether in the relevant state law or in fact, are to be interpreted in favor of the party who is accused of fraudulent joinder. *Id.* at 648.

## II. **Summary Judgment Standard**

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the

4

nonmoving party's claim. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(a), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S. Ct. 2553; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed.2d 538 (1986); *Auguster v. Vermillion Parish School Bd.,* 249 F.3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana,* 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.,* 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (emphasis in original) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed.2d 695 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *See* Fed. R. Civ. P. 56(c)(3)("court need consider only the cited materials"); *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving

party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little,* 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

### III. **Application of Legal Principles**

As an initial matter, the Court notes that it previously denied Plaintiff's first motion to remand based on its determination that Plaintiff had not pled a legally viable claim against Armatis such that his non-diverse citizenship would deprive this Court of subject matter jurisdiction under 28 U.S.C. § 1332. *See* Rec. Doc. 10. In reaching that conclusion, the Court determined that the only potentially viable fraud claim asserted against Armatis concerned his alleged misrepresentation regarding the basis of CCMSI's termination of Plaintiff's services in March 2009. Specifically, Armatis, on behalf of CCMSI, purportedly terminated Plaintiff's services upon discovering that Plaintiff did not have a private investigator's license and was the subject of a cease and desist order by the Louisiana State Board of Private Investigator Examiners. Plaintiff, however, asserted that CCMSI's rationale for the termination was pretext because Armatis knew that Plaintiff had let the license lapse in 2006, when Armatis and Carl Ayestas (another CCMSI executive) had advised that Plaintiff was exempt while providing services to the City. Because Plaintiff was terminated in March 2009, but did not file suit until more than a year later, in May 2010, the Court

found the fraud claim against Armatis to be untimely under Louisiana's one-year prescription period for tort claims. The Court's conclusions regarding that assertion have not changed.

Now, the Court is presented with a second motion to remand from Plaintiff, purportedly presenting newly discovered support for Armatis' alleged personal liability, as well as a motion for summary judgment filed by CCMSI. In support of its motion, CCMSI argues that Plaintiff can put forth no evidentiary basis supporting his breach of contract claims against it. Accordingly, CCMSI contends, Plaintiff's claims should be dismissed.

In addressing both motions, the Court first notes the ever evolving nature of Plaintiff's assertions of Defendants' alleged wrongdoing during the course of this litigation as Plaintiff has attempted to present his claims in the manner most advantageous to his efforts to recover damages. Specifically, in its state-court petition, Plaintiff alleges that "Armatis promised and agreed that petitioner as DBE would receive a minimum of 26% of the total value of [CCMSI's contract with the City]. Petitioner agreed to perform the services as stated in the contract for a minimum of 26% of the total value of the contract."[3] However, following its alleged revelation, during the course of discovery, that Plaintiff's invoices (for investigative services rendered) were being paid directly by the City, rather than out of the contractual fee that CCMSI received from the City, such that CCMSI allegedly realized more revenue from the contract than Plaintiff apparently initially had thought,[4] Plaintiff seemingly has modified his claim to fit this new information.

---

[3] *See* Petition (Rec. Doc. 1-1) at ¶ 6. *See also* ¶15 ("petitioner has suffered losses of income from the defendant by failing to provide petitioner with 26 % of the total value of the [] contract").

[4] *See, e.g.,* Rec. Doc. 43 at pp. 1, 5-6, and 8-9.

For instance, in Dwayne Alexander's May 24, 2011 affidavit,[5] submitted in connection with Plaintiff's opposition to CCMSI's motion for summary judgment and in support of Plaintiff's motion to remand,[6] Alexander asserts that Armatis told him that Plaintiff "would receive 26% of the DBE contract that CCMSI had with the City of New Orleans, and that the dollar value of his expenses should be about $214,000, which expenses would be paid in addition to his 26% DBE share of the CCMSI management fee [received from the City]."[7] Then, in a June 13, 2011 memorandum submitted in support of a motion for leave to file a reply brief in support of its motion to remand, Plaintiff complains that Armatis "expens[ed] out the entire body of work done by [Plaintiff] against the City's . . . expense account instead of paying the 26% DBE participation fee from CCMSI's administration fee."[8] One page later, however, Plaintiff asserts that "opposing counsel still does not 'get' [Plaintiff's] claim that [its] *expenses* should be paid from the City's expense account, but the separate *26% DBE participation fee* should have been paid from CCMSI's management fee, just as CCMSI had promised to [Plaintiff]. Otherwise, as the facts here show, CCMSI doesn't pay one cent to [Plaintiff], retains 100% profit on its DBE management fee, and Mr. Armatis personally receives a bonus for such improper manipulation of the City's DBE system."[9]

Regardless of the varying ways in which Plaintiff characterizes its claims, its evidentiary submissions nevertheless fail to support the existence of a viable claim for damages

---

[5] Dwayne Alexander is the "sole owner and shareholder"of Plaintiff. *See* Affidavit (Rec. Doc. 43-5) at ¶1.

[6] Rec. Doc. 43.

[7] *Id.* at ¶ 6.

[8] *See* Rec. Doc. 58-2, pp. 5-6.

[9] *Id.*, p. 7 (emphasis in original).

8

against Defendants. Specifically, Plaintiff puts forth no evidence adequately supporting its assertion that Plaintiff is entitled to receive additional payment simply because CCMSI (improperly or not) caused Plaintiff to be paid for its investigative services from a City expense account rather than from their own earnings received pursuant to CCMSI's contract with the City.[10] At *most*, viewing the language of the Form DBE-1 completed by Armatis on behalf of CCMSI and Alexander on behalf of Plaintiff, as well as all of the other evidence, in Plaintiff's favor, Plaintiff was entitled to receive compensation for investigatory services equaling 26% of the total amount paid to CCMSI by the City pursuant to its contract with CCMSI.[11] According to the figures reflected in Armatis' affidavit regarding amounts earned by CCMSI and amounts paid to Plaintiff in for 2007, 2008 and the first quarter of 2009,[12] Plaintiff was paid 26% or more for those time periods.[13] Except for Plaintiff's suggestion of late that it actually was entitled to *profits* equaling 26% of total value of the fee paid to CCMSI by the City pursuant to their contract, which the Court likewise rejects as unsupported,[14] Plaintiff offers no evidence contradicting the accuracy of the figures proffered by Defendants. Indeed, as CCMSI notes, Plaintiff undisputedly knew during the years in question that it received payment from CCMSI for only the amounts of its submitted invoices for investigative

---

[10] Absent other corroborating evidence, the Court does not find the affidavits submitted by Plaintiff's sole shareholder, Dwayne Alexander, and Deirdre Kyle, Plaintiff's proffered expert witness regarding DBE matters, carry this burden.

[11] As stated in Record Document 1-1, p. 22, the estimated dollar value of that work was $214,000 per annum.

[12] *See* Rec. Doc. 31-3, p.3.

[13] Citing the three-year prescriptive period set forth in article 3494 of the Louisiana Civil Code, Defendants urge that Plaintiff's claim regarding years prior to 2007 have prescribed. Plaintiff has not opposed this argument. Accordingly, the Court likewise finds that Plaintiff has failed to establish that a viable claim exists for any years prior to 2007.

[14] *See* Rec. Doc. 43-5, ¶12.

services rendered. As such, Plaintiff has not shown any entitlement to an award of damages.

Additionally, for the Court to find that Plaintiff may be entitled to an award of monetary damages because Armatis and CCMSI allegedly wrongfully paid for Plaintiff's investigatory services from City funds, rather than from CCMSI's contract fee, the Court would have to conclude that Plaintiff should receive a portion of ill gotten gains.[15] The Court rejects such a notion. Although the City possibly may have a right to seek damages and/or other legal relief against one or both of the defendants, Plaintiff, on the showing made, does not.[16]

Finally, to the extent that Plaintiff urges a breach of contract claim against CCMSI for terminating its services because it was unlicensed, that claim likewise does not survive summary judgment. Plaintiff has not demonstrated that it actually was exempt from state licensing requirements; moreover, at that time, it was subject to a cease and desist order issued by the Louisiana State Board of Private Investigator Examiners.[17]

---

[15] The Court acknowledges that CCMSI contends that the terms of its contract with the City directed that invoices for Plaintiff's investigative services be paid with City funds. *See, e.g.,* Rec. Doc. 55-3 and n.2 (citing Rec. Doc. 31-3, p. 31, and Rec. Doc. 31-9, pp. 3-4.

[16] The same is true with respect to Plaintiff's assertions regarding any DBE reporting deficiencies by Defendants, and any "gratuities" paid or given by Defendants. To the extent Alexander believes that inappropriate conduct occurred, he should report that to the appropriate City personnel or other authority. In the context of this action, however, Plaintiff has not shown an entitlement to recover damages because of it.

[17] *See* Rec. Doc. 31-11, p. 5.

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff's motion to remand should be denied and Defendant CCMSI's motion for summary judgment granted. Accordingly, Plaintiff's claims against CCMSI are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 30th day of March 2012.

_____
**KURT D. ENGELHARDT**
**United States District Judge**